FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 29, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

KIMBERLY P.,[1]

　　　　　　Plaintiff,

vs.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,[2]

　　　　　　Defendant.

No. 4:19-cv-05046-MKD

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

ECF Nos. 14, 15

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned

identifies them by only their first names and the initial of their last names.  *See*

LCivR 5.2(c).

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration.

Accordingly, the Court substitutes Andrew M. Saul as the Defendant.  *See* Fed. R.

Civ. P. 25(d).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 15. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's motion, ECF No. 14, and denies Defendant's motion, ECF No. 15.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

ORDER - 2

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of

ORDER - 3

substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the

1    enumerated impairments, the Commissioner must find the claimant disabled and

2    award benefits.  20 C.F.R. § 404.1520(d).

3         If the severity of the claimant's impairment does not meet or exceed the

4    severity of the enumerated impairments, the Commissioner must pause to assess

5    the claimant's "residual functional capacity."  Residual functional capacity (RFC),

6    defined generally as the claimant's ability to perform physical and mental work

7    activities on a sustained basis despite his or her limitations, 20 C.F.R. §

8    404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

9         At step four, the Commissioner considers whether, in view of the claimant's

10   RFC, the claimant is capable of performing work that he or she has performed in

11   the past (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is

12   capable of performing past relevant work, the Commissioner must find that the

13   claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of

14   performing such work, the analysis proceeds to step five.

15        At step five, the Commissioner considers whether, in view of the claimant's

16   RFC, the claimant is capable of performing other work in the national economy.

17   20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner

18   must also consider vocational factors such as the claimant's age, education, and

19   past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant is capable of

20   adjusting to other work, the Commissioner must find that the claimant is not

disabled.  20 C.F.R. § 404.1520(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On July 14, 2014, Plaintiff applied for Title II disability insurance benefits alleging a disability onset date of July 31, 2013.  Tr. 290-96.  The application was denied initially and on reconsideration.  Tr. 233-35; Tr. 237-38.  Plaintiff appeared before an administrative law judge (ALJ) on January 17, 2017.  Tr. 171-207.  On February 14, 2018, the ALJ denied Plaintiff's claim.  Tr. 13-46.

At step one of the sequential evaluation process, the ALJ found Plaintiff, who met the insured status requirements through December 31, 2017, has not engaged in substantial gainful activity since July 31, 2013.  Tr. 18-19.  At step two, the ALJ found that Plaintiff has the following severe impairments:  degenerative

disc disease, status post rotator cuff repair, status post left cubital tunnel release, bilateral carpal tunnel syndrome, and breast cancer.  Tr. 19.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 21-22. The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff] can lift or carry up to twenty pounds occasionally and up to ten pounds frequently, and can stand or walk for approximately six hours, and sit for approximately six hours, per eight hour work day with normal breaks.  Pushing or pulling with the left upper extremity [sic] limited to twenty pounds.  She can occasionally climb ramps, stairs, ladders, ropes or scaffolds, frequently balance, stoop, kneel, and crouch, and occasionally crawl.  [Plaintiff] can frequently reach and finger, but can perform only occasional overhead reaching. [Plaintiff] is capable of performing simple routine tasks, in a routine work environment, with simple work-related decisions.

Tr. 22.

At step four, the ALJ found Plaintiff was unable to perform any of her past relevant work.  Tr. 33.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were light jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as cashier, cleaner/housekeeper, and outside deliverer.  Tr. 34.  In the alternative, the vocational expert also testified there were sedentary jobs available that could accommodate one short stretch break of a minute or two between the normal breaks occurring every two hours, including

ORDER - 7

telephone information clerk, document preparer, and toy stuffer.  Tr. 34-35.

Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the

Social Security Act, from the alleged onset date of July 31, 2013, through the date

last insured, December 31, 2017.  Tr. 35.

On February 12, 2019, the Appeals Council denied review of the ALJ's

decision, Tr. 1-7, making the ALJ's decision the Commissioner's final decision for

purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

her disability insurance benefits under Title II of the Social Security Act.  Plaintiff

raises the following issues for review:

1.  Whether the ALJ properly evaluated Plaintiff's symptom claims;

2.  Whether the ALJ properly evaluated the medical opinion evidence; and

3.  Whether the ALJ conducted a proper step-five analysis.

ECF No. 14 at 3-4.

## DISCUSSION

### A. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on reasons that were clear and

convincing in discrediting her symptom claims.  ECF No. 14 at 6-10.  An ALJ

engages in a two-step analysis to determine whether to discount a claimant's

ORDER - 8

testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.

"First, the ALJ must determine whether there is objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or

other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted).

"The claimant is not required to show that [the claimant's] impairment could

reasonably be expected to cause the severity of the symptom [the claimant] has

alleged; [the claimant] need only show that it could reasonably have caused some

degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

omitted).  General findings are insufficient; rather, the ALJ must identify what

symptom claims are being discounted and what evidence undermines these claims.

*Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v.*

*Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

explain why it discounted claimant's symptom claims)).  "The clear and

convincing [evidence] standard is the most demanding required in Social Security

cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.*

*Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

ORDER - 9

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 404.1529(c).  The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his/her symptoms were not entirely consistent with the evidence.  Tr.  23.

### 1. Inconsistency with Objective Medical Evidence

The ALJ found the minimal physical examination findings were inconsistent with Plaintiff's allegations of extremely limiting physical conditions.  Tr. 23-24.

ORDER - 10

An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).

Here, the ALJ found that Plaintiff's reported physical symptoms were not as severe as she claimed. Tr. 23-24. The ALJ considered the generally normal findings on examination, including normal strength, gait, and muscle tone, with no atrophy. Tr. 24 (citing Tr. 698, 814, 2175, 2221, 2223, 2226). While there were some positive findings, they were generally minimally abnormal. Tr. 24 (citing Tr. 698, 814, 1457, 2198). Though an EMG and nerve conduction test showed moderate left elbow neuropathy, the physical examinations were only mildly abnormal. Tr. 24 (citing Tr. 698). The ALJ considered Plaintiff's more significant findings, including examinations with reduced range of motion and strength, but found Plaintiff also had many normal findings at those same examinations. Tr. 24 (citing Tr. 889, 914, 1348-53, 2238). Multiple providers also noted Plaintiff's

subjective complaints far outweighed the objective findings.  Tr. 24 (citing Tr. 1287, 1319, 1989).

While Plaintiff's symptoms naturally waxed and waned, the ALJ's finding that the objective findings were out of proportion with and did not corroborate Plaintiff's report of severe restrictions is reasonable.  Plaintiff offers an alternative interpretation of the evidence, citing to evidence such as Plaintiff's need for surgery for her cubital tunnel syndrome.  ECF No. 14 at 8-9.  Plaintiff's provider noted the surgery would likely not cause any permanent restrictions nor require retraining.  Tr. 708.  The ALJ's interpretation of the evidence was reasonable. This was a clear and convincing reason, coupled with the additional reasons discussed *infra*, to discount Plaintiff's symptom reports.

## 2.  Motivated by Secondary Gain

The ALJ reasoned Plaintiff sought out medical care from providers who would support her allegations and attempted to undermine evidence that was inconsistent with her allegations.  Tr. 24-25.  Evidence of being motivated by secondary gain is sufficient to support an ALJ's rejection of testimony evidence. *See Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992). Therefore, the tendency to exaggerate or engage in manipulative conduct during the process is a permissible reason to discount the credibility of the claimant's reported symptoms.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

ORDER - 12

1    Plaintiff did not challenge this reason; thus, any challenge is waived.  *See*

2  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

3  Despite the waiver, the Court considered the reasoning and finds it is supported by

4  substantial evidence.  Plaintiff submitted a statement in April 2015 that included

5  Plaintiff stating the February 2014 examination by Dr. Bauer and Dr. Wray was

6  not thorough and she was upset about the examination.  Tr. 24 (citing Tr. 566-67).

7  The ALJ observed that the statement was not submitted until over a year after the

8  examination, and it was not submitted until Plaintiff's attorney objected to one of

9  Dr. Bauer's examinations and the insurance administrator responded that there had

10  not been any reports of a negative experience with the exam.  Tr. 25 (citing Tr.

11  564-65).  The claims manager also documented inconsistent statements made by

12  Plaintiff.  Tr. 25 (citing Tr. 568-71).  The ALJ noted Plaintiff became upset when

13  providers opined she could return to work, and she ended appointments and care

14  with providers who did not agree she could not work.  Tr. 25 (citing Tr. 2020).

15    The claims manager found Plaintiff wrote a statement disagreeing with Dr.

16  Bauer's statements, but later gave different reasons for disagreeing with the

17  examination results.  Tr. 570, 574.  The claims manager also noted Plaintiff

18  misrepresented Dr. Bauer's report.  Tr. 568-69.  Plaintiff refused to be examined

19  by Dr. Bauer again.  *Id.*  After Ms. Glenn opined Plaintiff could return to work,

20  Plaintiff also walked out on an appointment with Ms. Glenn and refused to be

treated by her again.  Tr. 2020.  The ALJ reasonably concluded that Plaintiff

appeared to engage in behavior intended to undermine the evidence in her case.

This finding is supported by substantial evidence and was a clear and convincing

reason to discount Plaintiff's symptoms complaints.

### 3. Inconsistent with Treatment Notes

The ALJ found the record's lack of observations of Plaintiff being in distress

or discomfort was inconsistent with Plaintiff's allegations of constant, limiting

pain.  Tr. 25-26.  Minimal objective evidence is a factor which may be relied upon

in discrediting a claimant's testimony, although it may not be the only factor.  *See*

*Burch*, 400 F.3d at 680.  Plaintiff did not challenge this reason; thus, any challenge

is waived.  *See Carmickle*, 533 F.3d at 1161 n.2.  Despite the waiver, the Court

considered the reasoning and finds it is supported by substantial evidence.  The

ALJ found Plaintiff routinely appeared in no apparent distress, appeared "well" at

many appointments, and at most was described as appearing in mild pain.  Tr. 25

(citing, e.g., Tr. 698, 711, 887, 1313).  The ALJ also noted Plaintiff's subjective

complaints of pain were more severe than what was documented in the records

from the same appointments, which noted only mild pain.  Tr. 26 (citing Tr. 882-

88, 1325-47, 1459-75).  At an October 2014 visit, Plaintiff reported her pain was a

five out of 10, and in the past week it had been as high as an eight.  Tr. 1325.

Though there were some abnormalities on exam, Plaintiff was noted as appearing

ORDER - 14

1    in only mild pain. *Id.* At an October 2015 visit, Plaintiff reported her pain at a six

2    out of 10, with the highest pain being a seven. Tr. 1459. However, Plaintiff was

3    again noted as appearing in only mild pain. Tr. 1460. This was a clear and

4    convincing reason, supported by substantial evidence, to reject Plaintiff's symptom

5    claims.

6         *4. Activities of Daily Living*

7         The ALJ found Plaintiff's activities of daily living were inconsistent with

8    her symptom complaints. Tr. 26. The ALJ may consider a claimant's activities

9    that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can

10   spend a substantial part of the day engaged in pursuits involving the performance

11   of exertional or non-exertional functions, the ALJ may find these activities

12   inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina*,

13   674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to

14   be eligible for benefits, the ALJ may discount a claimant's symptom claims when

15   the claimant reports participation in everyday activities indicating capacities that

16   are transferable to a work setting" or when activities "contradict claims of a totally

17   debilitating impairment." *Molina*, 674 F.3d at 1112-13. Plaintiff did not challenge

18   this reason; thus, any challenge is waived. *See Carmickle*, 533 F.3d at 1161 n.2.

19   Despite the waiver, the Court considered the reasoning and finds it is supported by

20   substantial evidence.

ORDER - 15

The ALJ reasoned Plaintiff's reported ability to walk five miles three times per week, without any reported pain, was inconsistent with her allegations of disabling symptoms. Tr. 25 (citing Tr. 863). Though the analysis did not include any further analysis of Plaintiff's activities, an ability to walk five miles at a moderate pace, three times per week, without reported difficulty or symptoms, is inconsistent with Plaintiff's reports of disabling pain. Tr. 863. Plaintiff reported additional activities, including bicycling or walking at least three times weekly. Tr. 865. Plaintiff reported cooking dinner daily, doing laundry, mowing the lawn with a riding mower, and doing some of the household cleaning. Tr. 393. She also reported shopping weekly and taking her dog for a walk one to two times per week. Tr. 394-95. The ALJ's finding that Plaintiff's activities of daily living were inconsistent with her symptom claims is a clear and convincing reason, supported by substantial evidence, to reject Plaintiff's symptom complains.

### 5. Improvement with Conservative Treatment

The ALJ reasoned Plaintiff's improvement with conservative treatment was inconsistent with her symptom claims. Tr. 26. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (determining that conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *Tommasetti v.*

ORDER - 16

*Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).  The ALJ found Plaintiff reported significant improvement in her left upper extremity with minimal treatment.  Tr. 26 (citing Tr. 762).  Plaintiff had increased range of motion, decreased discomfort and increased function after physical therapy in 2013, though she later reported physical therapy provided only minimal relief.  Tr. 26 (citing Tr. 762, 1349).  Plaintiff argues she did not have significant improvement with conservative treatment, as demonstrated by her need for surgery.  ECF No. 14 at 8-9.  While Plaintiff later needed surgery, the medical records demonstrate Plaintiff had a period of improvement with physical therapy prior to the surgery.  Further, in the years after the surgery, Plaintiff reported her pain was relieved well by pain medications and lidocaine patches, and she reported she only "occasionally" needed to take pain medications during the day when she worked her left shoulder too hard.  Tr. 26 (citing Tr. 1506).  Further, any error is harmless where, as discussed *supra*, the ALJ lists additional reasons, supported by substantial evidence, for discrediting Plaintiff's symptom complaints.  *See Carmickle*, 533 F.3d at 1162-63; *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Batson v. Comm'r of Soc. Sec.*

ORDER - 17

1    *Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that any error the ALJ

2    committed in asserting one impermissible reason for claimant's lack of credibility

3    did not negate the validity of the ALJ's ultimate conclusion that the claimant's

4    testimony was not credible).

5        *6.  Motivation to Work*

6        The ALJ found Plaintiff's motivation to work inconsistent with her

7    allegations.  Tr. 26-27.  Evidence of a poor work history that suggests a claimant is

8    not motivated to work is a permissible reason to discredit a claimant's testimony

9    that she is unable to work.  *Thomas*, 278 F.3d at 959; SSR 16-3p[3] (factors to

10   consider in evaluating credibility include "prior work record and efforts to work");

11   *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); 20 C.F.R. § 404.1529 (work

12   record can be considered in assessing credibility).  Additionally, "receipt of

13   unemployment benefits can undermine a claimant's alleged inability to work

14   fulltime."  *Carmickle*, 533 F.3d at 1161-62 (citing *Copeland v. Bowen*, 861 F.2d

15   536, 542 (9th Cir. 1988)).  But where the record "does not establish whether [the

16   claimant] held himself out as available for full-time or part-time work," such a

17   "basis for the ALJ's credibility finding is not supported by substantial evidence,"

18   _____

19   [3] SSR 16-3p superseded SSR 96-7p effective March 28, 2016.  The Court applies

20   the regulation in effect at the time of the ALJ's decision.

ORDER - 18

as "[o]nly the former is inconsistent with his disability allegations." *Id.* The ALJ noted that Plaintiff received more income when receiving worker's compensation than she had received in her year of employment in 2011, and her worker's compensation benefits were almost as much as Plaintiff earned working in 2012. Tr. 26 (citing Tr. 305, 598-604). Plaintiff also earned less working than she received in worker's compensation benefits during most of her working years, with several years of earnings below $10,000, including one year with no earnings. Tr. 305. The ALJ reasonably considered Plaintiff's earnings record in determining Plaintiff lacked motivation to work.

The ALJ also reasoned Plaintiff's receipt of unemployment benefits in 2016, which required she certify she was willing and able to work, was inconsistent with her reported inability to work. Tr. 26 (citing Tr. 882). The record does not establish whether Plaintiff held herself out as available for full-time or part-time work. However, any error in the analysis is harmless as discussed *supra*, as the ALJ gave other clear and convincing reasons for rejecting Plaintiff's symptoms claims. *See Carmickle*, 533 F.3d at 1162-63; *Molina*, 674 F.3d at 1115.

### 7. Inconsistent Statements Regarding Work History

Lastly, the ALJ considered Plaintiff's inconsistent statements regarding her work history. Tr. 27. In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection

ORDER - 19

with the disability-review process with any other existing statements or conduct

under other circumstances. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)

(The ALJ may consider "ordinary techniques of credibility evaluation," such as

reputation for lying, prior inconsistent statements concerning symptoms, and other

testimony that "appears less than candid."). Plaintiff did not challenge this reason;

thus, any challenge is waived. *See Carmickle*, 533 F.3d at 1161 n.2. Despite the

waiver, the Court considered the reasoning and finds it is supported by substantial

evidence. Plaintiff testified she worked as a correctional officer for only two days,

though she reported elsewhere she worked as a correctional officer for eight

months. *Id.* (citing Tr. 199, 355, 357, 371). Plaintiff reported on one occasion that

she worked the job for three days and the remainder of her time was in training, Tr.

605, but this is inconsistent with her other reports where Plaintiff reported the

position without any mention of a special training period, Tr. 579. The ALJ also

found Plaintiff made inconsistent statements as to where her workplace injury took

place. Tr. 27 (citing Tr. 1449). This finding is supported by substantial evidence

in the record.

In sum, the ALJ gave numerous clear and convincing reasons, supported by

substantial evidence, to discount Plaintiff's symptoms complaints.

ORDER - 20

1

**B. Medical Opinion Evidence**

2      Plaintiff contends the ALJ improperly considered the opinions of P. Alex

3 Stone, PA-C; Jean You, M.D.; Kirk Holle, P.T.; Michael Sherfey, D.O.; Desiree

4 Ang, A.R.N.P.; Arthur Thiel, M.D.; Tracey Glenn, MS, A.R.N.P.; and Phillip

5 Drussel, P.T.  ECF No. 14 at 10-15.

6      There are three types of physicians: "(1) those who treat the claimant

7 (treating physicians); (2) those who examine but do not treat the claimant

8 (examining physicians); and (3) those who neither examine nor treat the claimant

9 [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

10 *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

11 Generally, a treating physician's opinion carries more weight than an examining

12 physician's, and an examining physician's opinion carries more weight than a

13 reviewing physician's.  *Id.* at 1202.  "In addition, the regulations give more weight

14 to opinions that are explained than to those that are not, and to the opinions of

15 specialists concerning matters relating to their specialty over that of

16 nonspecialists."  *Id.* (citations omitted).

17      If a treating or examining physician's opinion is uncontradicted, the ALJ

18 may reject it only by offering "clear and convincing reasons that are supported by

19 substantial evidence."  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

20 "However, the ALJ need not accept the opinion of any physician, including a

ORDER - 21

treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim*, 763 F.3d at 1161 (alteration in original); *see* 20 C.F.R. § 404.1502 (2013).[4] However, an ALJ is required to consider evidence from non-acceptable medical sources, such as therapists. 20 C.F.R. §

---

[4] The regulation that defines acceptable medical sources is found at 20 C.F.R. § 404.1502 for claims filed after March 27, 2017. The Court applies the regulation in effect at the time the claim was filed.

ORDER - 22

404.1527(f) (2013).[5]  An ALJ may reject the opinion of a non-acceptable medical source by giving reasons germane to the opinion.  *Ghanim*, 763 F.3d at 1161.

### 1. Ms. Stone

Ms. Stone opined on March 10, 2015 that repetitive heavy living, as required by Plaintiff's work as a certified nursing assistant, aggravated or caused Plaintiff's neck and left upper extremity symptoms.  Tr. 1438 (duplicated at Tr. 1942).  She stated Plaintiff reported the injury initially only involved left shoulder pain but progressed to both neck and shoulder pain and paresthesia.  *Id.*  On March 31, 2015, Ms. Stone opined that Plaintiff's cervical spine and left upper extremity impairments had not reached medical stability.  Tr. 906 (duplicated at Tr. 1943).  She stated the objective evidence of Plaintiff's conditions included positive bilateral Spurling's, decreased triceps reflexes, hypoesthesia of left C5, C6 and C8 dermatomes, 1+ brachioradialis, positive Hoffman's and decreased strength in the biceps.  *Id.*  She stated Plaintiff was on "minimal" opiate medication with no plan to decrease the medication.  *Id.*

---

[5] The regulation that requires an ALJ's consider opinions from non-acceptable medical sources is found at 20 C.F.R. § 404.1502c for claims filed after March 27, 2017.  The Court applies the regulation in effect at the time the claim was filed.

ORDER - 23

1    The ALJ gave Ms. Stone's opinions no weight.  Tr. 28.  As Ms. Stone is not

2    an acceptable medical source, the ALJ was required to give germane reasons to

3    reject the opinions.  *See Ghanim*, 763 F.3d at 1161.

4    First, the ALJ found Ms. Stone's March 31, 2015 opinion that Plaintiff's

5    conditions were not stable inconsistent with Dr. Sherfey's opinion.  Tr. 28.  An

6    ALJ may choose to give more weight to an opinion that is more consistent with the

7    evidence in the record.  20 C.F.R. § 404.1527(c)(4) ("[T]he more consistent a

8    medical opinion is with the record as a whole, the more weight we will give to that

9    medical opinion."); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

10   Relevant factors when evaluating a medical opinion include the amount of relevant

11   evidence that supports the opinion, the quality of the explanation provided in the

12   opinion, and the consistency of the medical opinion with the record as a whole.

13   *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495

14   F.3d 625, 631 (9th Cir. 2007); 20 C.F.R. § 404.1527(b)(6) (assessing the extent to

15   which a medical source is "familiar with the other information in [the claimant's]

16   case record").

17   While Ms. Stone opined Plaintiff's shoulder and spine conditions were not

18   stable, Tr. 906, Dr. Sherfey opined Plaintiff's shoulder was "fixed and stable," Tr.

19   28 (citing Tr. 814).  The ALJ reasoned Dr. Sherfey's opinion was entitled to more

20   weight as he was a treating specialist and a physician.  Tr. 28.  While opinions

from sources that are not acceptable medical sources are not automatically entitled

to lesser weight than opinions from acceptable medical sources, specialists'

opinions about issues related to their specialty are entitled to more weight than

opinions from non-specialists. 20 C.F.R. § 404.1527(c)(5), (f)(1). As a treating

orthopedic specialist, Dr. Sherfey's opinion was entitled to more weight than Ms.

Stone's opinion. This was a germane reason to reject Ms. Stone's opinion that

Plaintiff's shoulder condition is not stable. However, Dr. Sherfey opined Plaintiff

needed further evaluation and possible treatment for her spinal conditions, and he

deferred on the issue as it was outside his expertise. Tr. 814. There is no conflict

between Dr. Sherfey's opinion and Ms. Stone's opinion regarding Plaintiff's spinal

conditions. However, any error is harmless as the ALJ gave other germane reasons

to reject the opinion. *See Molina*, 674 F.3d at 1115.

Second, the ALJ found Ms. Stone's opinions lacked any functional

limitations. Tr. 28-29. An ALJ may reject an opinion that does "not show how [a

claimant's] symptoms translate into specific functional deficits which preclude

work activity." *See Morgan,* 169 F.3d at 601. Ms. Stone's March 10, 2015

opinion stated only that Plaintiff's conditions were not stable but did not indicate

any functional limitations due to the conditions. Tr. 1438. Ms. Stone's March 31,

2015 opinion stated that Plaintiff's shoulder and neck impairments were caused or

aggravated by her work as a certified nursing assistant but did not provide any

ORDER - 25

1  functional limitations due to the impairments.  Tr. 906.  This was a germane reason

2  to decline to give weight to Ms. Stone's opinions.

3      Third, the ALJ found Ms. Stone's opinions lacked any reference to medical

4  data and did not contain any rationale for her conclusions.  Tr. 29.  The Social

5  Security regulations "give more weight to opinions that are explained than to those

6  that are not."  *Holohan*, 246 F.3d at 1202.  "[T]he ALJ need not accept the opinion

7  of any physician, including a treating physician, if that opinion is brief, conclusory

8  and inadequately supported by clinical findings."  *Bray*, 554 at 1228.  Ms. Stone's

9  March 10, 2015 opinion contains references to Plaintiff's self-report but no

10  references to any objective evidence and does not provide any additional

11  explanation.  Tr. 1438.  Ms. Stone's March 31, 2015 opinion references Plaintiff's

12  objective medical findings, and plan for "possible" cervical epidural steroid

13  injections but does not provide further explain as to why Plaintiff's condition was

14  not stable.  Tr. 906.  The questionnaire asks when maximum medical improvement

15  was expected, but Ms. Stone did not answer the question.  *Id.*

16      Plaintiff argues Ms. Stone's treating records provide data and rationale to

17  support the opinion.  ECF No. 14 at 11.  The records demonstrate Plaintiff reported

18  varying levels of pain, but she also reported in December 2015 her medications

19  helped her to continue doing "well enough," and she felt her current treatment

20  regimen was "adequate" and she was satisfied with it.  Tr. 1473-74 (duplicated at

ORDER - 26

Tr. 2346-47).  Ms. Stone noted Plaintiff seemed to be in mild pain and had

limitations in her cervical range of motion, but otherwise had a normal physical

exam.  *Id.*  Ms. Stone found at two other appointments that Plaintiff had limited

cervical range of motion, tenderness in her cervical spine, spasm in the left

trapezius muscle, and decreased strength in the triceps.  Tr. 2350, 2354.

While the records demonstrate Plaintiff had continued pain and some

continued limitations, such level of pain and limitation was also noted by Dr.

Sherfey and he still found Plaintiff's condition stable.  Tr. 814.  The ALJ's

interpretation, finding Ms. Stone did not provide objective support that Plaintiff's

condition was unstable, is reasonable.  This was a germane reason to reject Ms.

Stone's opinion.

Plaintiff argues the ALJ failed to address Ms. Stone's "remaining opinions"

but does not cite to any opinions.  ECF No. 14 at 11.  While both of Ms. Stone's

opinions are each duplicated, the record does not appear to contain any other

opinions from Ms. Stone.  Further, any error in the ALJ's analysis of Ms. Stone's

opinions would be harmless.  The two existing opinions do not contain any

functional limitations and Plaintiff does not provide any analysis of any harmful

impact of the rejection of Ms. Stone's opinions.  Plaintiff generally argues the

opinions were improperly considered and should have been given greater weight

but does not point to any part of Ms. Stone's opinion that would have impacted the

ORDER - 27

RFC.  ECF No. 14 at 14-15.  While Plaintiff contends other opinions exist in the record, Plaintiff does not demonstrate any harmful error from the rejection of any opinions.  Thus, any error is harmless.  *See Molina,* 674 F.3d at 1115.

### 2. Dr. You

On November 11, 2016, Dr. You, Plaintiff's treating pain specialist, opined Plaintiff can: sit 45 minutes at one time, for a total of four hours in an eight-hour day; stand 30 minutes at one time, for a total of standing/walking two hours in a day; lift less than 10 pounds frequently, 10 pounds occasionally, 20 pounds rarely and never 50 pounds; rarely lift above shoulders and reach to the floor, and frequently reach to waist level and handle objects.  Tr. 2021-22.  She further opined Plaintiff would: need unscheduled breaks of 30 minutes every 45 minutes, during which she would need to lie down; miss more than four days of work per month; have difficulty squatting, kneeling and pulling; and would be unable to return to her previous work or perform other work.  *Id.*  Dr. You opined the impairments began in January 2013 and are permanent.  Tr. 2022.

The ALJ gave Dr. You's opinion no weight.  Tr. 29.  As Dr. You's opinion is contradicted by the opinions of William Stump, M.D., Tr. 933, and R. David Bauer, M.D., Tr. 1303-27, the ALJ was required to give specific and legitimate reasons, supported by substantial evidence, to reject the opinion.  *See Bayliss*, 427 F.3d at 1216.

First, the ALJ reasoned Dr. You's opinion was based on Plaintiff's self-report. Tr. 29. A physician's opinion may be rejected if it is too heavily based on a claimant's properly discounted complaints. *Tonapetyan*, 242 F.3d at 1149. Here, Dr. You wrote at the end of the questionnaire she completed, "according to patient's subjective report." Tr. 2022. Dr. You did not complete the section asking for Plaintiff's medical impairments to be listed, nor did she fill in the sections asking for explanations if necessary, and she did not add any other comments. Tr. 2021-22. While Plaintiff argues Dr. You's opinion was also based on her review of objective evidence, ECF No. 14 at 12, Dr. You's written statement does not support Plaintiff's contention, given the statement it is based on Plaintiff's subjective report, and a lack of any reference to objective evidence or further explanation in the opinion. The ALJ reasonably found that the opinion was based on Plaintiff's self-report. This was a specific and legitimate reason to reject Dr. You's opinion.

Second, the ALJ found Dr. You had only been seeing Plaintiff for two months at the time she rendered the opinion. Tr. 29. The number of visits a claimant had with a particular provider is a relevant factor in assigning weight to an opinion. 20 C.F.R. § 404.1527(c)(2)(i). Here, the ALJ gave significant weight to non-examining medical consultants, Tr. 27, and to providers who examined Plaintiff on only one occasion, Tr. 30. The ALJ also reasonably gave significant

weight to the January 2014 and October 2014 opinions of treating physician Dr.

Sherfey, who had a longer treating relationship with Plaintiff than Dr. You.  Tr. 28.

Any potential error in giving more weight to providers who had not examined

Plaintiff, or who had seen her on fewer occasions than Dr. You, would be harmless

because the ALJ properly gave greater weight to Dr. Sherfey's opinions and gave

other specific and legitimate reasons for rejecting the opinion.  *See Molina,* 674

F.3d at 1115.

Third, the ALJ found Dr. You's records did not contain findings that

supported her opinion.  Tr. 29 (citing Tr. 2181, 2186, 2191-92).  A medical opinion

may be rejected if it is unsupported by medical findings.  *Bray,* 554 F.3d at 1228;

*Batson*, 359 F.3d at 1195; *Thomas*, 278 F.3d at 957; *Tonapetyan*, 242 F.3d at 1149;

*Matney*, 981 F.2d at 1019.  Furthermore, a physician's opinion may be rejected if it

is unsupported by the physician's treatment notes.  *Connett v. Barnhart*, 340 F.3d

871, 875 (9th Cir. 2003).  Dr. You's records indicate Plaintiff reported she requires

minimal assistance with activities of daily living, handles housework two to three

days per week, and exercises by walking one mile.  Tr. 2191.  Plaintiff reported

pain, fatigue, numbness, tingling and anxiety, but she had a normal exam except an

unsteady gait and tenderness in the cervical spine.  Tr. 2191-92.  At another exam,

Plaintiff had a normal physical exam except she had more than 11 positive tender

points, though she reported worsening symptoms.  Tr. 2184-86.  Plaintiff has also

reported she is able to work or volunteer a few hours a day, take part in family life, and does limited social activities.  Tr. 2184.  Plaintiff's physical exams were generally normal, with cervical tenderness observed at some appointments but not others.  Tr. 2175, 2181.  This was a specific and legitimate reason to reject the opinion.

In sum, the ALJ gave specific and legitimate reasons, supported by substantial evidence, to reject Dr. You's opinion.

*3. Mr. Holle*

On December 14, 2016, Mr. Holle, Plaintiff's treating physical therapist, opined Plaintiff can: sit for one hour at a time, for a total of four hours in an eight-hour work day; stand for 30 to 45 minutes at a time for a total of standing/walking two hours in a day; occasionally lift up to 10 pounds, rarely lift 20 pounds, and never lift 50 pounds; and rarely reach above shoulders, to waist level or to floor level and frequently handle objects with fingers.  Tr. 2024-25.  Mr. Holle also opined Plaintiff cannot tolerate a full work day and could only work four to six hours at most, she would need two unscheduled breaks per day for 30 minutes, during which she would need to lie down, and Plaintiff would miss more than four days per month if she worked full-time.  Tr. 2024.  He also stated Plaintiff's impairments began January 11, 2013 and are permanent.  Tr. 2025.

The ALJ gave Mr. Holle's opinion no weight.  Tr. 29.  As Mr. Holle is not an acceptable medical source, the ALJ was required to give germane reasons to reject the opinion.  *See Ghanim*, 763 F.3d at 1161.

First, the ALJ found Mr. Holle had only been treating Plaintiff for two months for one impairment, yet opined Plaintiff's impairments had begun in January 2013.  Tr. 29 (citing Tr. 2024-25, 2195-96).  Although retrospective assessments should not be disregarded solely because they are rendered retrospectively, in *Magallanes*, the Ninth Circuit found that when a treating physician opines about a claimant's condition prior to the date that the treating physician had direct personal knowledge of the condition, the treating physician is "scarcely different from any non-treating physician with respect to that time period."  *Magallanes v. Bowen*, 881 F.2d 747, 754 (9th Cir. 1989) (ALJ properly discounted doctor's retrospective opinion about a disability onset date in light of the fact that the doctor did not see the claimant until two years later and there was no other objective medical evidence of disability during the time alleged); *Johnson v. Shalala*, 60 F.3d 1428, 1432-1433 (9th Cir. 1995) (concluding that because a physician's retrospective assessment included no specific assessment of claimant's functional capacity prior to that date, the ALJ's rejection of his testimony was reasonable); *see also Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th

ORDER - 32

Cir. 1984) (ALJ properly ignored opinion of psychiatrist who examined Plaintiff because "[a]fter-the-fact psychiatric diagnoses are notoriously unreliable.").

Mr. Holle began treating Plaintiff in October 2016 for bilateral Achilles tendinitis. Tr. 2218. He rendered his opinion in December 2016, and opined Plaintiff's impairments began in January 2013. Tr. 2025. Plaintiff argues that Mr. Holle performed a functional capacity test and thus his opinion was based on all of Plaintiff's impairments. ECF No. 14 at 12. However, the functional capacity test was performed in December 2016. Tr. 2197-98. Mr. Holle did not examine or treat Plaintiff prior to October 2016, thus his opinion regarding Plaintiff's impairments and limitations prior to that date was not based on his personal knowledge of her conditions. This was a germane reason to reject Mr. Holle's opinion.

Second, the ALJ found Mr. Holle's opinion relied on Plaintiff's self-report. Tr. 29. An opinion may be rejected if it is too heavily based on a claimant's properly discounted complaints. *Tonapetyan*, 242 F.3d at 1149. The ALJ reasoned Mr. Holle did not provide any support for his opinion that Plaintiff cannot complete a normal workday/workweek, nor that her impairments had been so limiting since January 2013. Tr. 29. While Mr. Holle provided comments regarding Plaintiff's difficulties with shoulder strength, and some difficulties with lower extremity weakness and using stairs, he did not explain why Plaintiff cannot

ORDER - 33

sustain a full-time work day.  Tr. 29, 2024-25.  While Mr. Holle stated Plaintiff

cannot resume her past work as a certified nursing assistant, he also noted Plaintiff

may be able to perform other work such as working with computers but stated a

vocational counselor would need to make such a determination.  Tr. 2025.

Plaintiff argues Mr. Holle performed a functional capacity exam and thus the

opinion was not based only on Plaintiff's self-report.  ECF No. 14 at 12.  However,

as discussed above, the exam was not performed until December 2016, though the

opinion addresses as early as January 2013.  During the exam, Plaintiff reported

neck and shoulder pain and burning, as well as lower extremity weakness and

neuropathy.  Tr. 2197.  Mr. Holle's physical examination only examined Plaintiff's

lower extremities, and he previously only treated her for Achilles tendinitis.  Tr.

2197-98.  Mr. Holle opined on Plaintiff's ability to use her upper extremities,

despite not examining or treating her for her reported upper extremity impairments.

Tr. 2024-25.  The ALJ's finding that Mr. Holle's opinion was based on Plaintiff's

self-report was reasonable and is a germane reason to reject the opinion.

Third, the ALJ found Mr. Holle's opinion was inconsistent with the

treatment records.  Tr. 29.  A medical opinion may be rejected if it is unsupported

by medical findings.  *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at 1195; *Thomas*,

278 F.3d at 957; *Tonapetyan*, 242 F.3d at 1149; *Matney*, 981 F.2d at 1016.  The

ALJ reasoned Mr. Holle's opinion that Plaintiff's impairments were permanent is

ORDER - 34

inconsistent with his treatment note that Plaintiff had good "rehab potential."  Tr. 29 (citing Tr. 2198).  The ALJ further reasoned Mr. Holle's opinion was inconsistent with the records in general, which demonstrated generally normal physical exams with minimal abnormal physical findings, as discussed above.  Tr. 29.  The ALJ gave germane reasons to reject Mr. Holle's opinion.

### 4.  Dr. Sherfey and Dr. Thiel

Dr. Sherfey, a treating orthopedic specialist, gave multiple opinions regarding Plaintiff's functioning.  As Dr. Sherfey's opinions are contradicted by the opinions of Dr. Stump, Tr. 933, and Dr. Bauer, Tr. 1303-27, the ALJ was required to give specific and legitimate reasons, supported by substantial evidence, to reject the opinions.  *See Bayliss*, 427 F.3d at 1216.

### a.  Dr. Sherfey's December 2015 Opinions

In December 2015, Dr. Sherfey opined Plaintiff could perform her past work as a certified nursing assistant, without any restrictions.  Tr. 1476.  However, that same month, he also opined Plaintiff was released to modified duty, as she could never lift more than 10 pounds.  Tr. 1477.  The ALJ gave these opinions partial weight.  Tr. 28.

While Plaintiff asserts the ALJ improperly gave varying weights to Dr. Sherfey's opinions, Plaintiff does not mention the December 2015 opinions nor set forth any argument regarding the opinions.  ECF No. 14 at 13.  Thus, any

ORDER - 35

challenge to those findings is waived.  *See Carmickle*, 533 F.3d at 1161 n.2.

However, the Court conducted an independent review of the ALJ's analysis of the

opinion and finds the ALJ's determination is supported by substantial evidence in

the record.

The ALJ found Dr. Sherfey's opinions were inconsistent with one another.

Tr. 28.  Relevant factors to evaluating any medical opinion include the amount of

relevant evidence that supports the opinion, the quality of the explanation provided

in the opinion, and the consistency of the medical opinion with the record as a

whole.  *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631.  Dr. Sherfey opined

on December 9, 2015 that Plaintiff could return to work as a certified nursing

assistant with no restrictions.  Tr. 1476.  The same day, he opined on a separate

form that Plaintiff could return to work with modified duties, as she can never lift

more than ten pounds.  Tr. 1477.  It also appears he indicated that though she could

return to work with modified duties, she had a "poor prognosis for return to work

at the job of injury at any date."  *Id.*  Dr. Sherfey did not provide any explanation

for the differences between the two forms or his varying statements.  The ALJ's

determination that Dr. Sherfey's opinions were inconsistent was reasonable.

The ALJ also found Dr. Sherfey's opinion would not have impacted the

outcome, as even if Plaintiff was limited to lifting no more than ten pounds, the

vocational expert testified there would be sedentary work Plaintiff was able to

ORDER - 36

perform. Tr. 28.  The ALJ reasoned Plaintiff would have been found not disabled

even if she was limited to a sedentary RFC.  Tr. 34-35.  However, that statement

does not consider that Plaintiff was closely approaching retirement age at her date

last insured and a sedentary RFC would have been disabling if no transferrable

skills were found, under Grid Rule 201.14.[6]  *See* 20 C.F.R. § 404, Appendix 2 to

Subpart P.  It is unclear if the ALJ would have weighed Dr. Sherfey's opinion

differently had he understood that Dr. Sherfey's sedentary opinion would be

disabling.  On remand, the ALJ is directed to reconsider Dr. Sherfey's December

2015 opinion that Plaintiff can never lift more than 10 pounds.  The ALJ is

directed to incorporate the limitation into the RFC or give specific and legitimate

reasons, supported by substantial evidence, to reject the opinion.

---

[6] Plaintiff was born on May 16, 1966.  Tr. 360.  Plaintiff's date last insured is

December 31, 2017.  Tr. 306.  Given her date of birth, Plaintiff was 51 years-old

on her date last insured.  Grid Rule 201.14 applies to claimants who are

"approaching retirement age," which is defined as individuals between 50 years-

old and 54 years-old and directs a finding of disability if the claimant is limited to

sedentary work and does not have transferrable skills to sedentary work.  20 C.F.R.

§ 404, Appendix 2 to Subpart P.

ORDER - 37

b.  Dr. Sherfey's Other Opinions

Dr. Sherfey rendered other opinions regarding Plaintiff's functioning, including opinions in January 2014 and August 2014.  As this case is being remanded to reconsider Dr. Sherfey's December 2015 opinion, the ALJ is directed to also reconsider Dr. Sherfey's other opinions, including the January 2014 and August 2014 opinions, and incorporate the limitations into the RFC or give specific and legitimate reasons, supported by substantial evidence, to reject the opinions.

c.  Dr. Thiel's Opinions

Dr. Thiel, a treating orthopedic specialist, completed multiple forms regarding Plaintiff's ability to return to work.  He opined Plaintiff had the following limitations during the following time periods: she could not work from August 7, 2013 through August 15, 2013, with a return to light duty, meaning no lifting or carrying over five pounds with the left arm, on August 16, 2013, Tr. 840; she could not work from September 15, 2013 through November 24, 2013, Tr. 837; she could return to work November 27, 2013, with an indefinite limitation to light duty work, meaning no lifting over 15 pounds and no carrying over 10 pounds, Tr. 836.

Dr. Sherfey also gave multiple opinions about Plaintiff's ability to return to work.  He opined Plaintiff could work regular duty with no left arm lifting January 17, 2013 through March 23, 2013, Tr. 848-51; she could not work from April 11,

ORDER - 38

2013 through May 10, 2013, Tr. 847; she could return to light work, with no use of her left arm for lifting, on May 13, 2013, Tr. 846; she could return to regular duty work June 24, 2013, Tr. 845; and she could not work from July 12, 2013 through August 16, 2013, Tr. 841-42, 844.

The ALJ considered all of the above work restriction opinions together; though he stated they were all from Dr. Sherfey, he cited to the opinions from Dr. Thiel as well and gave the opinions no weight. Tr. 28. As the opinions were contradicted, the ALJ was required to give specific and legitimate reasons, supported by substantial evidence, to reject the opinions. *See Bayliss*, 427 F.3d at 1216.

The ALJ reasoned the opinions did not meet the durational requirements. Tr. 28. Temporary limitations are not enough to meet the durational requirement for a finding of disability. 20 C.F.R. § 404.1505(a) (requiring a claimant's impairment to be expected to last for a continuous period of not less than twelve months); 42 U.S.C. § 423(d)(1)(A) (same); *Carmickle*, 533 F.3d at 1165 (affirming the ALJ's finding that treating physicians' short-term excuse from work was not indicative of "claimant's long-term functioning").

Dr. Thiel and Dr. Sherfey's opinions specifically regarding Plaintiff's ability to return to work span 11 months in 2013. Tr. 836-51. However, in January 2014, Dr. Sherfey opined Plaintiff had ongoing limitations. Tr. 814. The opinions all

related to Plaintiff's limitations due to her shoulder impairment, and demonstrate Plaintiff had limitations in her ability to lift with her left arm that spanned 12 months or longer.  Thus, the opinion that Plaintiff was limited in her ability to lift with her left arm was improperly rejected as temporary in nature.

Further, Dr. Thiel rendered his final opinion in December 2013, in which he opined Plaintiff is restricted to light duty work indefinitely, which met the durational requirement.  The ALJ did not give any reason for rejecting Dr. Thiel's opinion other than finding the opinions were temporary.  The ALJ's rejection of Dr. Thiel's opinions is not harmless.

Dr. Thiel opined Plaintiff could not lift more than 15 pounds and could not carry more than 10 pounds.  Tr. 836.  The ALJ found Plaintiff can lift and carry up to 20 pounds occasionally and 10 pounds frequently.  Tr. 22.  The ALJ also alternatively obtained a list of jobs from the vocational expert that Plaintiff could perform if she was limited to sedentary work; as sedentary work requires lifting no more than 10 pounds, this alternative finding would account for Dr. Thiel's opinion.  *See* 20 C.F.R. § 404.1567(a).  However, as discussed *supra*, the ALJ applied the incorrect age category when considering if a sedentary RFC would be disabling.

ORDER - 40

On remand, the ALJ is directed to reconsider all of Dr. Thiel's opinions and incorporate them into the RFC or give specific and legitimate reasons, supported by substantial evidence, to reject the opinions.

*5. Ms. Ang*

On April 7, 2015, Ms. Ang, a treating nurse practitioner, opined Plaintiff can: sit without restriction; seldomly work from a ladder, climb ladders or climb stairs; frequently lift, carry or push/pull five pounds, occasionally 10 pounds, seldom 20 pounds and never 25 pounds; occasionally twist, bend/stoop, crawl, reach, work over shoulders, keyboard, use her wrist, grasp, and engage in fine manipulation; and frequently squat/kneel, operate foot controls, and handle vibratory tasks. Tr. 1348. Ms. Ang did not provide an opinion on Plaintiff's ability to stand/walk. *Id.* Ms. Ang opined Plaintiff had a poor prognosis for returning to work at the job of injury at any date, and opined Plaintiff's limitations would last longer than 30 days but would not be permanent. *Id.*

The ALJ gave Ms. Ang's opinion little weight. Tr. 31. As Ms. Ang is not an acceptable medical source, the ALJ was required to give germane reasons to reject the opinion. *See Ghanim*, 763 F.3d at 1161.

The ALJ reasoned Ms. Ang's opinion did not meet the durational requirement. Tr. 31-32. Temporary limitations are not enough to meet the durational requirement for a finding of disability. 20 C.F.R. § 404.1505(a)

ORDER - 41

1  (requiring a claimant's impairment to be expected to last for a continuous period of

2  not less than twelve months); 42 U.S.C. § 423(d)(1)(A) (same); *Carmickle*, 533

3  F.3d at 1165 (affirming the ALJ's finding that treating physicians' short-term

4  excuse from work was not indicative of "claimant's long-term functioning").

5        The ALJ found Ms. Ang's opinion did not meet the duration requirement

6  because she did not opine Plaintiff's limitations are permanent.  Tr. 31-32.

7  However, Ms. Ang opined the limitations would last greater than 30 days and did

8  not give an end date. Tr. 1348.  Ms. Ang also opined Plaintiff had a poor prognosis

9  for returning to work at the job of injury at any date.  *Id.*  There is no clear

10  indication as to the length of time to which Ms. Ang's opinion applied, and as such

11  the ALJ erred in rejecting Ms. Ang's opinion due to it being temporary.

12        While the ALJ offered additional reasons to reject Ms. Ang's opinion, the

13  Court finds the ALJ's error in the analysis of Ms. Ang's opinion is not harmless.

14  Moreover, as the case is being remanded to reconsider other opinions, the ALJ is

15  also directed to reconsider Ms. Ang's opinion and incorporate the limitations into

16  the RFC or give germane reasons to reject the opinion.  For the purposes of the

17  remand, the Court notes that Ms. Ang is a treating nurse practitioner, and not an

18  examining provider as the ALJ stated.

19

20

ORDER - 42

1

### 6. *Ms. Glenn*

2  Ms. Glenn gave several opinions regarding Plaintiff's impairments. In June

3 2016, Ms. Glenn opined that Plaintiff's conditions caused by her workplace injury

4 were fixed and stable, and Plaintiff has a two percent permanent partial impairment

5 of her left upper extremity. Tr. 624. In March 2016, Ms. Glenn opined that from

6 March 23, 2016 through April 23, 2016, Plaintiff could perform modified duty,

7 with seldomly lifting, carrying and pushing/pulling 20 pounds and frequently one-

8 quarter of a pound, occasional left reaching, no work above the left shoulder and

9 seldom left grasping. Tr. 2018. In June 2016, Ms. Glenn opined that from June

10 13, 2016 through July 13, 2016, Plaintiff could not climb or work on a ladder,

11 could occasionally reach with the left arm, never work above her left shoulder,

12 seldomly grasp with the left, seldomly lift, carry and push/pull 20 pounds and

13 frequently one-quarter of a pound. Tr. 2359. Later in June 2016, Ms. Glenn

14 opined that Plaintiff could lift up to 75 pounds and carry up to 40 pounds. Tr.

15 2404. Finally, in July 2016, Ms. Glenn opined that Plaintiff could seldomly

16 perform work above her left shoulder and could lift no more than 50 pounds. Tr.

17 2019.

18  The ALJ gave Ms. Glenn's earlier opinions that Plaintiff had more "serious

19 limitations" no weight and gave her later opinions, which suggested Plaintiff is

20 capable of more activity, significant weight. Tr. 32. As Ms. Glenn is not an

ORDER - 43

1    acceptable medical source, the ALJ was required to give germane reasons to reject

2    the opinions.  *See Ghanim*, 763 F.3d at 1161.

3         The ALJ found Ms. Glenn's earlier opinions inconsistent with the evidence,

4    while the later opinions were more consistent with the evidence.  Tr. 32.  An ALJ

5    may choose to give more weight to an opinion that is more consistent with the

6    evidence in the record.  20 C.F.R. § 404.1527(c)(4) ("[T]he more consistent a

7    medical opinion is with the record as a whole, the more weight we will give to that

8    medical opinion."); *Nguyen*, 100 F.3d at 1464.  Relevant factors to evaluating any

9    medical opinion include the amount of relevant evidence that supports the opinion,

10   the quality of the explanation provided in the opinion, and the consistency of the

11   medical opinion with the record as a whole.  *Lingenfelter*, 504 F.3d at 1042; *Orn*,

12   495 F.3d at 631.

13        The ALJ noted Ms. Glenn's later opinions were based on additional and

14   updated information, including the thorough exam conducted by someone Ms.

15   Glenn found to be a "well respected shoulder specialist."  Tr. 32 (citing Tr. 2020).

16   The exam from the shoulder specialist, Dr. Lynch, found there was no objective

17   evidence that Plaintiff was incapable of lifting up to 50 pounds and returning to

18   work up to the medium category of work.  Tr. 2010.  The examination

19   demonstrated Plaintiff had generally normal strength, sensation, reflexes and no

20   tenderness, with some range of motion limitations.  Tr. 2005.  Dr. Lynch stated the

ORDER - 44

1   objective evidence demonstrated Plaintiff had a prior injury but Plaintiff's

2   subjective complaints "far exceed the minimal orthopedic diagnoses." Tr. 2009.

3   The ALJ further reasoned Ms. Glenn's later opinions were more consistent with

4   the physical examination findings and lack of observations of Plaintiff being in

5   distress, as discussed above. Tr. 32. While Plaintiff argues the ALJ should not

6   have given Ms. Glenn's later opinion weight and should have given more weight to

7   Ms. Glenn's earlier opinions, ECF No. 14 at 14, the ALJ reasonably weighed Ms.

8   Glenn's opinions. As such, the ALJ gave germane reasons to reject Ms. Glenn's

9   opinions.

10          *7. Mr. Drussel*

11          Mr. Drussel opined Plaintiff can rarely lift (from waist to floor or waist to

12   crown) 15 pounds and carry 22.5 pounds, occasionally lift 12.5 pounds and carry

13   17.5 pounds, and frequently lift 5 pounds from the floor and 7.5 pounds from waist

14   to crown and carry 10 pounds. Tr. 855. Mr. Drussel found Plaintiff had no to

15   slight limitation in her ability to engage in other physical activities like standing,

16   walking and sitting. *Id.* He further opined Plaintiff temporarily could not perform

17   her work as a correctional officer but did not indicate what limitations prevented

18   her from performing the job nor when he anticipated she would be released to

19   work. Tr. 861.

20

ORDER - 45

1    The ALJ gave Mr. Drussel's opinion significant weight "with some minor

2  exceptions." Tr. 30.  The ALJ differed in Plaintiff's weight limitations accounted

3  for in the RFC, and assigned additional postural and manipulative limitations,

4  though Mr. Drussel did not find Plaintiff had such limitations. *Id.* As Mr. Drussel

5  is not an acceptable medical source, the ALJ was required to give germane reasons

6  to reject the opinions. *See Ghanim*, 763 F.3d at 1161.

7    The ALJ reasoned Mr. Drussel's opinion would not impact the RFC as it

8  was close to light work, and even if she was limited to sedentary work, Plaintiff

9  would not be found disabled.  Tr. 32.  As discussed *supra*, this reasoning is flawed.

10 While the ALJ offered additional reasons to reject Mr. Drussel's opinion, the Court

11 finds the ALJ's error in the analysis of Mr. Drussel's opinion is not harmless.

12 Moreover, as the case is being remanded to reconsider other opinions, the ALJ is

13 also directed to reconsider Mr. Drussel's opinion and incorporate the limitations

14 into the RFC or give germa1ne reasons to reject the opinion.

15    **C. Step-Five**

16    Plaintiff argues the ALJ erred at step five. ECF No. 14 at 15-19.  At step

17 five of the sequential evaluation analysis, the burden shifts to the Commissioner to

18 establish that 1) the claimant can perform other work, and 2) such work "exists in

19 significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2);

20 *Beltran*, 700 F.3d at 389.  In assessing whether there is work available, the ALJ

ORDER - 46

1  must rely on complete hypotheticals posed to a vocational expert.  *Nguyen*, 100

2  F.3d at 1467.  The ALJ's hypothetical must be based on medical assumptions

3  supported by substantial evidence in the record that reflects all of the claimant's

4  limitations.  *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).  The

5  hypothetical should be "accurate, detailed, and supported by the medical record."

6  *Tackett*, 180 F.3d at 1101.

7        The hypothetical that ultimately serves as the basis for the ALJ's

8  determination, i.e., the hypothetical that is predicated on the ALJ's final RFC

9  assessment, must account for all the limitations and restrictions of the claimant.

10  *Bray*, 554 F.3d at 1228.  As discussed above, the ALJ's RFC need only include

11  those limitations found credible and supported by substantial evidence.  *Bayliss*,

12  427 F.3d at 1217 ("The hypothetical that the ALJ posed to the VE contained all of

13  the limitations that the ALJ found credible and supported by substantial evidence

14  in the record.").  "If an ALJ's hypothetical does not reflect all of the claimant's

15  limitations, then the expert's testimony has no evidentiary value to support a

16  finding that the claimant can perform jobs in the national economy."  *Id*.  However,

17  the ALJ "is free to accept or reject restrictions in a hypothetical question that are

18  not supported by substantial evidence."  *Greger v. Barnhart*, 464 F.3d 968, 973

19  (9th Cir. 2006).  Therefore, the ALJ is not bound to accept as true the restrictions

20  presented in a hypothetical question propounded by a claimant's counsel if they are

ORDER - 47

1  not supported by substantial evidence.  *Magallanes*, 881 F.2d at 756-57; *Martinez*

2  *v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986).  A claimant fails to establish that a

3  step five determination is flawed by simply restating argument that the ALJ

4  improperly discounted certain evidence, when the record demonstrates the

5  evidence was properly rejected.  *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-

6  76 (9th Cir. 2008).

7      As the case is being remanded on other grounds, on remand, the ALJ is

8  instructed to reconsider the impact the medical opinion evidence has on step five of

9  the evaluation.  The ALJ is further instructed to apply the relevant grid rule in

10  determining Plaintiff's ability to perform other work at step five.

11      **D. Remedy**

12      Plaintiff urges this Court to remand for an immediate award of benefits.

13  ECF No. 14 at 19.  "The decision whether to remand a case for additional

14  evidence, or simply to award benefits is within the discretion of the court."

15  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*,

16  761 F.2d 530 (9th Cir. 1985)).  When the Court reverses an ALJ's decision for

17  error, the Court "ordinarily must remand to the agency for further proceedings."

18  *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379

19  F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is

20  to remand to the agency for additional investigation or explanation"); *Treichler v.*

1  *Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).  However, in a

2  number of Social Security cases, the Ninth Circuit has "stated or implied that it

3  would be an abuse of discretion for a district court not to remand for an award of

4  benefits" when three conditions are met.  *Garrison v. Colvin*, 759 F.3d 995, 1020

5  (9th Cir. 2014) (citations omitted).  Under the credit-as-true rule, where (1) the

6  record has been fully developed and further administrative proceedings would

7  serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons

8  for rejecting evidence, whether claimant testimony or medical opinion; and (3) if

9  the improperly discredited evidence were credited as true, the ALJ would be

10  required to find the claimant disabled on remand, the Court will remand for an

11  award of benefits.  *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).  Even

12  where the three prongs have been satisfied, the Court will not remand for

13  immediate payment of benefits if "the record as a whole creates serious doubt that

14  a claimant is, in fact, disabled."  *Garrison*, 759 F.3d at 1021.

15       Given the numerous conflicting medical opinions, there are conflicts in the

16  evidence that still require resolution by the ALJ.  As such, the case is remanded to

17  the ALJ for reconsideration of the medical opinion evidence and reevaluation of

18  the step five analysis.

19

20

ORDER - 49

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED September 29, 2020.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 50